IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RACHEL R. BALL,
        Plaintiff,

                                    Civil Action 2:18-cv-376
    v.                       JUDGE MICHAEL H. WATSON
                                    Chief Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff, Rachel R. Ball, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

                              **I.    BACKGROUND**

Plaintiff protectively filed her application for benefits in August 2014, alleging that she has been disabled since April 29, 2005, due to rejection of her heart transplant and brain damage caused from her heart stopping. (R. at 153–60, 171.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 117–19.) Administrative Law Judge Jeannine Lesperance ("ALJ") held a

1

hearing on March 28, 2017, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 35–77.) On August 2, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 15–26.) On February 22, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–6.) Plaintiff then timely commenced the instant action.

## II. PLAINTIFF'S TESTIMONY

At the administrative hearing, Plaintiff testified that she lived with her 5-year-old son. (R. at 40.) She is able to drive and has a driver's license. (R. at 41.) However, her father drove her to the hearing and drives her to doctor's appointments because she "get[s] confused[.]" (R. at 42.) Plaintiff graduated from high school, and she went to college for "a few months." (*Id.*) She previously worked part-time in several restaurants while she was in high school, but she has not worked since 2005. (R. at 42–44.) Plaintiff testified that she is unable to work because she is unable to stand for "even 20 minutes," "a lot of things I don't understand," and "I'm not good with people [] skills." (R. at 45.)

Plaintiff explained that while some of her medical records indicate that she was walking three miles a day and running after her son, this was only for a period of time when she was getting better. (R. at 45–46.) She started trying to walk because she was told she needed a new heart and the doctors wouldn't consider surgery unless she lost weight. (R. at 46.) At the time of the hearing, she weighed approximately 186 pounds, she has previously weighed as much as 230 pounds. (*Id.*) She lost the weight over a period of five years. (*Id.*)

When discussing her activities of daily living, Plaintiff testified that she has a case manager who assists her in understanding her mail and paying her bills. (R. at 48.) A friend

2

helps her care for her pets. (*Id.*) Plaintiff is able to do "routine things" such as shopping, and taking care of basic household tasks such as cooking and cleaning. (*Id.*) Plaintiff writes down her appointments so that she does not forget them. (R. at 49.) Socially, she visits friends and they watch movies together. (*Id.*)

### III. MEDICAL RECORDS[1]

Upon referral for a repeat neuropsychological evaluation by John Kovalchin, M.D., to document her neuropsychological functioning and to assist with clinical management, Plaintiff presented for evaluation and testing on three occasions in April and July 2014. (R. at 228–34). Both Amery Treble-Barna, M.A., a psychology intern with the Pediatric Neuropsychology Program, and Jennifer Cass, Ph.D., ABPP/CN, Pediatric Neuropsychologist, signed the neuropsychological evaluation ("the neuropsychological evaluation"). (R. at 233–34.)

According to the neuropsychological evaluation, Plaintiff experienced cognitive impairments relating to her cardiac arrest in 2000 and subsequent heart transplant in 2005. (R. at 229.) Psychosocial history was remarkable for mood difficulties and several significant stressors. (*Id.*) Plaintiff reported feelings of depression and anxiety. (*Id.*) Plaintiff has two close friends but spends most of her time at home. (*Id.*)

Plaintiff was tested on three occasions, including two during hospitalizations for inpatient medical procedures and once as an outpatient. (R. at 230.) During the inpatient testing sessions, "Plaintiff had difficulty concentrating, was drowsy, and fell asleep during both testing sessions" and had to schedule an outpatient appointment to complete testing. (*Id.*) Testing results revealed overall cognitive ability in the low-average range on the WASI-II, with a full-scale

---

[1] The Undersigned limits the analysis of the evidence and the administrative decision to the first contention of error raised in the Statement of Errors.

score of 82, around the tenth percentile. (*Id*.) Verbal comprehension and perceptual reasoning indices were in the low average range with standard scores of 89 (25th percentile) and 80 (10th percentile). (*Id*.) Plaintiff demonstrated significant impairments in verbal learning and memory, and improved right hand motor functioning. (R. at 230–31.)

Plaintiff's neuropsychological profile places her at risk for academic, vocational, and adaptive difficulties. (R. at 232.) She may have difficulty acquiring new skills, performing skills independently, learning and recalling new information, and communicating her understanding. (*Id*.) Because of her difficulties with executive functions, she may have a hard time getting started on tasks, and struggle to complete her work in a systematic and efficient manner. (*Id*.) Plaintiff's work may be slow or impulsive, disorganized, or of inconsistent quality and her slower processing would likely interfere with her ability to complete tasks efficiently. (*Id*.) Without some level of support, Plaintiff may have difficulty maintaining employment. (*Id*.)

The neuropsychological evaluation opined that Plaintiff is likely to function best in a consistent, highly structured work environment in which she has an individual supervisor/mentor who can monitor her performance and offer support. (R. at 232–33.) Plaintiff would benefit from cues and ongoing monitoring to ensure that she starts tasks when expected, remain focused, and attend to relevant information. (R. at 233.)

According to the neuropsychological evaluation, Plaintiff's memory impairments warrant particular consideration. (*Id*.) When possible, Plaintiff's memory difficulties should be managed through environmental supports, external prompts, repetition and review of information, and extended drill and practice. (*Id*.) In future workplace or post-secondary

4

education settings, Plaintiff should qualify for services under the Americans with Disabilities Act. (*Id.*)

## IV. ADMINISTRATIVE DECISION

On August 2, 2017, the ALJ issued her decision. (R. at 15–26.) At step one of the sequential evaluation process,[2] the ALJ first found that Plaintiff had not engaged in substantial gainful activity since July 10, 2014, the application date. (R. at 17.)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: coronary artery disease, status post remote heart transplant; obesity; a cognitive impairment; anxiety; and depression. (*Id.*) The ALJ concluded, however, that Plaintiff's right lower extremity neuropathy is non-medically determinable impairment during the relevant period. (R. at 17-18.)

At step three of the sequential process, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments

---

[2]Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that she can occasionally balance, stoop, kneel, crouch, or crawl and can climb ramps and stairs for up to two hours per day. She cannot climb ladders, ropes, or scaffolds; and she cannot work around hazards such as unprotected heights, or moving mechanical parts. The claimant should also avoid work in temperature extremes, and avoid exposure to humidity, wetness, vibration, and atmospheric conditions. The claimant can perform simple, routine, short-cycle tasks at an average pace, but she cannot perform jobs that have strict time or production demands. She can adapt to a relatively static set of tasks where changes are explained and demonstrated, and she can interact on an unlimited basis with coworkers and supervisors, but job duties should not require interaction with the general public.

(R. at 20.) In reaching this determination, the ALJ assigned "some weight" to the neuropsychological evaluation. (R. at 24.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff is capable of work that exists in significant numbers in the national economy. (R. at 25–26.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 26.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.     ANALYSIS

Plaintiff advances three contentions of error. First, Plaintiff argues the RFC does not adequately account for Plaintiff's limitations because, *inter alia*, the ALJ erred by assigning only "some" weight to the opinion of Marc Miller, Ph.D., and the evaluation signed by Amery Treble-Barna, M.A., and Jennifer Cass, Ph.D. ABPP/CN. Plaintiff next contends the ALJ erred by not finding her idiopathic progressive polyneuropathy to be a medically determinable impairment or non-severe impairment. Plaintiff also argues that the ALJ improperly evaluated Listing 12.02, relating to neurocognitive disorders, failing to address the A criteria of Listing 12.02, and only

7

discussing the B and C criteria of the Listing in her decision. Finally, Plaintiff contends the ALJ erroneously determined that Plaintiff's idiopathic progressive polyneuropathy should not even be considered a medically determinable impairment. (ECF Nos. 9, 16). For the reasons that follow, the Undersigned finds that the ALJ erred when assessing the neuropsychological evaluation signed by Ms. Treble-Barna and Dr. Cass.

The ALJ assigned "some weight" to this evaluation, explaining as follows:

> In her neuropsychological examination discussed above, Ms. Treble-Barna finds that the claimant's memory and cognitive impairments "may affect" the claimant's ability to function in future work settings (2F/1). The report also indicates that the claimant would likely function best in a consistent highly structured work environment that she may have difficulty acquiring new skills, getting started on tasks and may face psychosocial stressors (2F/6). Although Ms. Treble-Bama is not an acceptable medical source, and the purpose of her report was to advise the claimant's parents regarding treatment methods, and not to identify work-related functional limits, I give the report some weight. The above residual functional capacity assessment accommodates the described functional limitations by limiting the claimant to simple routine tasks with few changes, no strict production requirements, and no public interaction.

(R. at 24.)

Dr. Cass, who co-signed Ms. Treble-Barna's neuropsychological evaluation, is a licensed clinical neuropsychologist. (R. at 234.) Although the ALJ contends that Ms. Treble-Barna is not an "acceptable medical source," "she makes no attempt to explain why a report that is co-signed by an acceptable medical source . . . [(a licensed neuropsychologist)] cannot be considered[]" an "acceptable medical source." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 435 (6th Cir. 2014); *see also Mitchell v. Comm'r of Soc. Sec.*, No. 5:15 CV 974, 2016 WL 4507791, at *6 (N.D. Ohio Aug. 29, 2016) ("Where an ALJ confronted by such an opinion bearing the signatures of both an acceptable and non-acceptable source simply declares the non-acceptable source the sole 'author' of that opinion, and makes no attempt to ascertain

whether the acceptable source qualifies as a 'treating source' the ALJ has failed to evaluate that opinion under the proper standard.") (citations omitted); *Pater v. Comm'r of Soc. Sec.*, No. 1:15 CV 1295, 2016 WL 3477220, at *7 (N.D. Ohio June 27, 2016) ("Under the law, there is no difference between 'opinions filled out and signed by a treating psychiatrist and opinions filled out by a social worker and then signed – thus adopted – by a treating psychiatrist.'") (citations omitted); *Fairchild v. Colvin*, 14 F. Supp. 3d 908, 917 n.5 (S.D. Ohio 2014) (finding that an ALJ typically is not required to treat the opinions of licensed clinical social workers with the deference that is due an "acceptable medical source" under 20 C.F.R. § 404.1513(a), but "in this instance, Plaintiff's treating psychiatrist, Esam Alkhawaga, M.D. signed off on the statements given by Ms. Rothman, thus making the statements an opinion from an acceptable medical source.") (citations omitted); *cf. Loukinas v. Comm'r of Soc. Sec.*, No. 1:14-cv-930, 2016 WL 1126550, at *12 (S.D. Ohio Mar. 21, 2016) ("Dr. Natarajan's endorsement of the mental status questionnaire rendered it an opinion of a treating physician, even if Dr. Natarajan did not personally complete the form. . . . Accordingly, the fact that Dr. Natarajan's opinion was contained on a form he may not have generated is not a 'good reason' for discounting his opinion.") (citations omitted); *Robinson v. Comm'r of Soc. Sec.*, No. 2:14-cv-01682, 2015 WL 5768483, at *3 (S.D. Ohio Sept. 30, 2015) ("The Ruling [SSR 96-2p] does not distinguish between opinions filled out and signed by a treating psychiatrist and opinions filled out by a social worker and then signed—and thus adopted—by a treating psychiatrist. . . . The March 11 Assessment is a treating source opinion.").

Accordingly, whether Dr. Cass is a treating physician as Plaintiff contends (ECF No. 16 at 3–4) or examining physician, the ALJ, in weighing Dr. Cass's medical opinion with the rest of the relevant evidence, must apply the factors set forth in 20 C.F.R. § 416.927(c), including the

examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. *Id.*; 20 C.F.R. § 404.1527(a)–(c); *see also Smith-Johnson*, 579 F. App'x 426, 435 ("Koopman's opinions also are properly considered under the regulations that require evaluation of every medical opinion '[r]egardless of its source,' and that permit 'other sources' to be used to determine severity.") (citing 20 C.F.R. §§ 404.1513(d), 404.1527(c)); *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that there is no requirement, however, that the ALJ "expressly" consider each of the factors under *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004) when not affording controlling weight to a treating physician's opinion within the written decision). Here, the ALJ failed to address any of these factors. (R. at 24.) Because of the ALJ's fundamental mischaracterization of the neuropsychological evaluation co-signed by Ms. Treble-Barna and Dr. Cass as not an acceptable medical source, it cannot be said that the ALJ properly considered the opinions within that evaluation. *Id.*; *see also Trietsch v. Astrue*, No. 3:09-cv-413, 2010 WL 6407037, at *8 (S.D. Ohio Dec. 1, 2010) (recommending case be remanded where, *inter alia*, the ALJ failed to weigh doctor's opinions under the same regulatory factors that are applicable to treating medical source opinions), *adopted by* 2011 WL 1234683 (S.D. Ohio Mar. 30, 2011).

The Commissioner nevertheless insists that the ALJ properly considered the neuropsychological evaluation and, in any event, "incorporated many of Ms. Treble-Barna's restrictions by limiting Plaintiff to simple routine tasks with few changes, no strict production requirements, and no public interaction." (ECF No. 15 at 6.) The Commissioner's arguments are not well taken. For the reasons previously discussed, the ALJ erred in concluding that the neuropsychological evaluation was not from an "acceptable medical source." However, even

assuming for the moment that the neuropsychological evaluation is not an acceptable medical source, it is still an "other source" entitled to consideration using the same factors under 20 C.F.R. § 404.1527(c) even though "not every factor for weighing opinion evidence will apply in every case" depending "on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1). The ALJ "generally should explain the weight given to opinions from these other sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2); *see also* SSR 06-03p (same). The ALJ failed to do so here (R. at 24), rendering the undersigned unable to follow the ALJ's reasoning and requiring remand. *Randazzio v. Comm'r of Soc. Sec.*, No. 2:13–cv–689, 2015 WL 881511, at *3 (S.D. Ohio Mar. 2, 2015) (finding remand "the most appropriate remedy to ensure the ALJ considers" other source opinion in light of ALJ's failure to properly consider such opinion under SSR 06–3p).

The ALJ's assertion that the RFC accommodated the functional limitations in the neuropsychological evaluation does not require a different result. Regardless of whether the neuropsychological evaluation is from a treating source, other acceptable medical source, or other source, the ALJ's failure to explain how she evaluated this evaluation precludes meaningful review. *See id.*; *Tyson v. Comm'r of Soc. Sec.*, No. 1:16-cv-130, 2017 WL 1130028, at *5 (W.D. Mich. Mar. 27, 2017) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.") (quoting *Hurst v. Sec'y of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985)); *Poole v. Berryhill*, No. 16-10912, 2017 WL 4960167, at *1 (E.D. Mich. Sept. 13, 2017) (finding that meaningful review was precluded where the ALJ

"failed in meaningful respects to consider the entire period at issue, failed to sufficiently explain the weight that she gave to the opinions in the record, and generally failed to provide a logical bridge between the evidence and the result").[3]

## VII. CONCLUSION

In sum, due to the error outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

---

[3]This finding obviates the need for in-depth analysis of Plaintiff's remaining contentions of error (*See* ECF No. 9.) However, on remand, the ALJ may consider these remaining contentions of error, if appropriate.

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

|  |  |
|---|---|
| **DATED: July 15, 2019** | **/s/ Elizabeth A. Preston Deavers**<br>**ELIZABETH A. PRESTON DEAVERS**<br>**CHIEF UNITED STATES MAGISTRATE JUDGE** |